O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| SHENG KUI LIN; YING YANG, | § |
| *Petitioners*, | § |
| | §    **CIVIL ACTION NO.: 5:07-cv-26** |
| v. | § |
| | § |
| UNITED STATES, | § |
| | § |
| *Respondent*. | § |
| | § |

## OPINION & ORDER

Pending before the Court is Petitioners Sheng Kui Lin and Ying Yangs' Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. [Dkt. No. 1]. Upon due consideration of the Petition, and the governing law, the Court **ORDERS** a response from the United States Attorney.

### I. PROCEDURAL BACKGROUND AND RELEVANT FACTS

Petitioners are citizens of China. [Dkt. No. 1, ¶¶ 4-5]. In 1999, Petitioners entered the United States and immediately sought asylum; their applications were denied. [Dkt. No. 1, ¶¶ 14, 19]. In 2001, an immigration judge ordered Petitioner Lin removed from the United States, a decision Lin did not appeal. [Dkt. No. 1, ¶ 16]. Petitioner Yang was ordered removed in 2004. [Dkt. No. 1, ¶ 22]. Yang did not appeal the most recent order for her removal.[1] [Dkt. No. 1, ¶ 22]. What follows is a significant time gap in which Petitioners were apparently living in the United States uninhibited until they were taken into custody by the Bureau of Immigration and Customs Enforcement (ICE), on November 10, 2006. [Dkt. No. 1, ¶ 25]. To

---

[1] Petitioner Yang did appeal her *initial* removal order, but such is irrelevant for present purposes. [Dkt. No. 1, ¶ 20]. As will be made apparent below, it matters only that she failed to appeal her most recent removal order.

date, Petitioners remain in custody and claim that their continued detention is unlawful because: (1) it is in violation of 8 U.S.C. § 1231, the statute establishing the Attorney General's power to detain aliens for removal purposes; (2) because their detention is "indefinite" and without "tenable justification;" (3) because their continued detention violates their substantive due process "right to family unity;" and (4) because it is being imposed without the administrative procedural protections to which Petitioners are entitled via procedural due process.

## II.   DISCUSSION

The proper method for attacking a deportation order in federal court is by filing an appeal with the respective federal court of appeals, as the federal district courts lack jurisdiction to entertain such claims. 8 U.S.C. § 1252(a)(5). However, habeas corpus remains the appropriate mechanism for an alien ordered removed to attack their continued custody after a deportation order has become final. *Zadvyda v. Davis*, 533 U.S. 678, 687 (2001) (citing *Cheng Fan Kwok v. INS*, 392 U.S. 206 (1968)). Petitioners do not challenge the validity of their respective removal orders, but rather the legality of their continued confinement. Therefore, this Court has jurisdiction to hear their claims.

Dismissal of a habeas petition is appropriate if "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996); *Sylvester v. Francis*, 2006 U.S. Dist. Lexis 3414 (S.D. Tex. 2006) (applying *Lonchar* specifically in the § 2241 context).

**A.  Petitioners' Statutory Challenge to Detention**

The Court must first discuss the workings of the Alien Removal Statute, 8 U.S.C. § 1231, in order to fully address Petitioners' statutory argument.

When an alien is ordered removed by an immigration judge, 8 U.S.C. § 1231(a)(1)(A) provides that the Attorney General shall "remove" (deport) the alien from the United States within a period of 90 days . . . ." That same subparagraph coins this ninety day timeframe the "removal period." Paragraph (a)(2) requires the Attorney General to detain the alien during the removal period. Sometimes it takes more than ninety days for the authorities to secure removal of the alien. Thus, even after the ninety day removal period expires, the Attorney General may continue to detain the alien in some circumstances pending ultimate removal; this expressly applies to any alien the Attorney General deems "to be a risk to the community or unlikely to comply with the order of removal." 28 U.S.C. § 1231(a)(6). In other words, the Attorney General may continue detainment beyond the removal period if he has reason to believe the alien is a "flight risk" and unlikely to return to the authorities once deportation arrangements have been secured. Importantly, however, § 1231(a)(6) fails to specify *how long* the Attorney General can continue detention beyond the removal period. Thus, read literally and taken on its face, § 1231(a)(6) would present serious constitutional problems, as such a reading would allow for indefinite detention of aliens by the Attorney General.

Hesitant to interpret an ambiguous statute in a manner that would render it constitutionally invalid, the Supreme Court has concluded that § 1231(a)(6) does not express a congressional ratification of indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Rather, the Court has read the statute to allow only for detention terms that are "reasonably necessary" to secure removal. *Id.* at 689. In this regard, the Court in *Zadvydas* declared a "six-month

3

presumption," during which detention is to be presumed reasonable under the statute. *Id.* at 701. After this six month period, "the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (quoting *Zadvydas*, 533 U.S. at 701).

Important in determining how the aforementioned caselaw and statutory provisions affect the current analysis is the determination of when Petitioners' removal periods began. According to § 1231(a)(1)(B), the removal period begins:

> on the latest of the following: (i) [t]he date the order of removal becomes administratively final; (ii) [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; (iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Petitioners have not appealed their respective orders of removal, [Dkt. No. 1 at 5-6], and their brief does not indicate that they were incarcerated immediately prior to being detained for immigration purposes. Therefore, Petitioners' removal periods began when the respective orders mandating their removal became "administratively final." For present purposes, a removal order becomes administratively final upon "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B)(ii). An alien ordered removed has thirty days to appeal that decision to the Board. 8 C.F.R. § 1003.38(b). Accordingly, Petitioners' removal orders are administratively final, and the respective removal periods expired long before their detentions began in November 2006. Petitioners' detention is now, and has always been, of the "post-removal period" type provided for by § 1231(a)(6), not removal period detention under (a)(1)(A).

Notwithstanding the fact that their detentions began less than five months ago, Petitioners argue that "the clock for calculating the reasonable period of removal [under *Zadvydas*] began to run as soon as Petitioners' respective orders of removal became final." [Dkt. No. 1, ¶ 41]. Therefore, according to Petitioners, the six-month reasonableness presumption established in *Zadvydas* expired for Petitioner Lin sometime in 2002, and for Petitioner Yang, sometime in 2004, [Dkt. No. 1, ¶ 42]. Per their argument, *any* detention of either Petitioner after the year 2004 is illegal under § 1231 if the government does not come forward and show that their continued detention of Petitioners is justified under § 1231(a)(6) for any of the reasons enumerated in that subparagraph.

This is an interesting argument. The thrust of it seems to be that if the government was going to detain Petitioners at all, it must have done so not only for less than six months, but must have done so during the six months *immediately following* the dates on which the orders mandating their removal became final. However, there is nothing in the statute, or the caselaw interpreting it, to suggest that such is the case.

Supreme Court decisions such as *Clark* and *Zadvydas* do not claim to inform *when* the government's power to detain aliens ordered removed must be exercised. Rather, they simply establish the *duration* of detention "reasonable" under the statute. Importantly, the Court's decisions in this context have centered on legislative intent; that is, what power Congress could reasonably be deemed to have conferred on the Executive in enacting § 1231. Logically guiding the Court's analysis was the purpose of the statute, which is to facilitate the deportation of aliens ordered removed. It follows, then, that a "reasonable" detention for *Zadvydas* purposes is one which Congress would deem reasonably necessary in a given circumstance to secure removal.

One can only wonder why the government did not detain Petitioners immediately after they were ordered removed. Indeed, the statute by its own language mandates immediate detention. 8 U.S.C. § 1231(a)(2); *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90-day removal period . . . aliens *must* be held in custody." (emphasis added)). In any event, the government now seeks to enforce removal orders issued some time ago, and there is nothing in § 1231 to indicate that the Attorney General cannot enforce those removal orders "late." If indeed the government may do so, it enjoys the corresponding power to detain Petitioners for a term reasonably necessary to effectuate removal. If a detention of six months is presumably reasonable in order to achieve such ends, it hardly seems to matter under the statute *when* the government exercises that power.

The Court emphasizes that by invoking *Zadvydas*, Petitioners implicitly argue only that their detentions are unreasonable *in the eyes of Congress*. Strictly speaking, the reasonableness standard of *Zadvydas* is not a constitutional one, but rather is presumed through statutory construction to have been established by Congress. *Zadvydas*, 533 U.S. at 689. Thus, the governing consideration is what Congress would have deemed reasonably necessary to achieve the ends the statute is meant to serve. There is no basis to believe that Congress would have deemed six months an unreasonable amount of time to effectuate deportation if such a pursuit is initiated years after an order for such has been rendered, as opposed to immediately thereafter.

Of course, Petitioners, in about two months, will be free to challenge their detentions on this same ground, as the six-month presumption the government now enjoys will soon expire.

**B. "Indefinite Confinement" without "Tenable Justification"**

Petitioners next argue that their current confinement violates their Fifth Amendment right to be free from indefinite detention without "tenable justification." [Dkt. No. 1, ¶ 55]. Rejection of this argument follows from the Court's rejection of the last; a deeper focus on the Supreme Court's opinion on *Zadvydas* illustrates why. In announcing the six-month presumption, the Court stated:

> [i]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided" . . . For similar reasons, we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

*Zadvydas*, 533 U.S. at 689 (internal citations omitted).

The Court's creation of the six-month presumption as a matter of *statutory construction* is premised on its conclusion that Congress did not intend to vest power in the Executive to violate the due process rights of detainees. A corollary to this reasoning is that the duration of a detention imposed under § 1231 will be presumed *constitutional* until after six months have passed, at which point detention begins to present the specter of indefiniteness such that the government would be compelled via the Due Process Clause to show cause for continued detention. Indeed, *Zadvydas* would make little sense if a petitioner, merely by virtue of invoking a constitutional provision rather than legislative intent, could, within four months of being confined, impose upon the government the burden of justifying its continued detention of the alien to a federal court.

In short, according to the Supreme Court, § 1231 allows the government to detain aliens ordered removed for six months without explaining to the courts why it is doing so. *See id.* at

7

701 ("After [the] 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing."). If this interpretation of § 1231 was compelled by the Court's reluctance to render the statute constitutional, it follows that Petitioners' four month detention is presumably constitutional.

### C.  Petitioners' "Right to Family Unity"

Petitioners next claim that their continued detention violates their substantive due process "right to family unity." [Dkt. No. 1 at 19].

There is no such right. All of the cases Petitioners cite in support of this creative notion discuss either rights that have nothing to do with "family unity" specifically, or the rights of parents to make specific decisions concerning the upbringing of their children without government intrusion. *See*, *e.g.*, *Troxel v. Granville*, 530 U.S. 57 (2000); *Wisconsin v. Yoder* 406 U.S. 205 (1972). Only a strained reading could distill from this caselaw a substantive due process right to "family unity" in a general sense; that is, the right of family members to maintain their "ongoing relationship[s] as a family unit" free from *any* government action that may incidentally disrupt familial intimacy or proximity. [Dkt. No. 1, ¶ 78].

### D.  Petitioner Lin's Procedural Due Process Argument

Petitioner Lin argues that his continued confinement is unconstitutional because it is being imposed without the procedural protections established for immigration detainees under federal regulations.[2] [Dkt. No. 1 at 16]. Although Petitioner Lin does not employ this exact phraseology, he argues that he is being denied procedural due process by way of the government's alleged failure to grant him a "custody review," an internal administrative

---

[2] Petitioners' brief indicates that this argument does not apply to Petitioner Yang. [Dkt. No. 1, ¶¶ 27-31; 63-65; 72].

8

mechanism the ICE employs to determine whether a detainee's continued detention remains necessary. *See generally* 8 C.F.R. § 241.4.

Assuming the truth of his brief, Petitioner Lin has not received a custody review. [Dkt. No. 1, ¶ 68]. The Department of Homeland Security, through its regulatory power, requires the ICE to conduct a custody review of a detainee before the expiration of the removal period.[3] 8 C.F.R. 241.4(k)(1). Since Lin was obviously not detained during his removal period, the question becomes whether he is entitled to a custody review during his post-removal period detention. In other words, the Court must decide whether the initial custody review requirement provides detainees a method for attacking their confinement within the "first ninety days" of their confinement, regardless of whether those ninety days comprise the removal period, or constitute purely post-removal period confinement. The Court finds that it does.

Section 241.4 implicitly describes the "custody review" as a procedural safeguard designed to provide detainees a fair chance to show that their continued confinement is unwarranted. For example, paragraph (h)(2) provides that a detainee shall be given written notice 30 days prior to their hearing so that she may prepare arguments supporting her release. That provision also provides that the detainee shall be entitled to representation of her choice, albeit at no cost to the government. It is no surprise, then, that § 241.4 has been read to provide detainees with an internal process the kind of which must be provided before the government may deprive an individual of life, liberty, or property. *See Zadvydas*, 533 U.S. at

---

[3] Section 241.4(k)(2) also provides for mandatory *post*-removal period custody reviews, but that provision applies only after the Director of the Detention and Removal Field Office refers the alien's case to the Headquarters Post-Order Detention Unit (HQPDU), at his discretion, or after three months have elapsed after the alien's initial custody review. *See also* 8 C.F.R. 241.4(c)(2). Petitioner fails to allege that either of these prerequisites have been satisfied, which explains his reliance only on the initial custody review provision of § 241.4 (h)(1), [Dkt. No. 1, ¶ 66].

9

705 ("Were the INS, in an arbitrary or categorical manner, to deny an alien access to the administrative processes in place to review continued detention, habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures under 8 CFR § 241.4.") (Kennedy, J. dissenting).

In short, § 241.4 establishes a right of detainees to challenge their continued detention via a custody review before the end of the ninety day removal period. Petitioner Lin alleges he has been detained for over three months, and has not yet enjoyed a custody review. Given that such custody reviews are deemed a procedural protection for detainees, it makes little sense to conclude that the procedure is inapplicable if the given alien's detention *began* as post-removal period detention, rather than removal period detention. Indeed, such a reading of § 241.4 would be especially stilted considering that the government is required by law to detain all aliens at the time they are ordered removed. 8 U.S.C. § 1231(a)(2). Such is what the Department of Homeland Security presumably contemplated when establishing the right of detainees to an initial custody review, which in turn is likely why § 241.1 presumes that the review will take place during the removal period, rather than later.

Of course, currently the Court does not know whether Petitioner Lin has indeed been denied a custody review. The Court reviews the petition in a vacuum, without the benefit of an adversarial response or a cumulative record of prior proceedings. Accordingly, pursuant to 28 U.S.C. § 2243, the government must show cause as to why a writ of habeas corpus should not issue for its alleged failure to provide Petitioner Lin his due process. The Court **ORDERS** as follows:

1. The Clerk shall serve a copy of the Motion, Petitioners' memorandum in support thereof, and this Order to the United States Attorney for the Southern District of

   Texas, Attention: Jose Flores, Assistant U.S. Attorney, P.O. Box 1179, Laredo, Texas 78042.

2. Pursuant to the three day timeframe established by 28 U.S.C. § 2243, the United States Attorney is directed to file an answer to Petitioners' §2241 Motion, and memorandum in support thereof, within <u>three days</u> of the date of this Order, and shall forward a copy of its response to Petitioners' counsel by certified mail, return receipt requested.

3. If the United States Attorney elects to answer by filing a dispositive motion (*i.e.*, motion to dismiss or for summary judgment,) Petitioners shall file an answer within thirty (30) days of the date reflected on the certificate of service. If Petitioners fail to timely comply, the Court may dismiss the cause for want of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

The Clerk will provide a copy of this Order to the parties.

IT IS SO ORDERED.

Done this 28th day of March, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**